# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

DAVID L. EZELL,            )
                                )
      Plaintiff,         )
                                )
      vs.               )         Case No. 4:11CV1202SNLJ/MLM
                                )
MICHAEL J. ASTRUE,     )
Commissioner of Social Security,   )
                                )
      Defendant.       )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Michael J. Astrue partially denying the application of Plaintiff David L. Ezell for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 405(g) et seq. Plaintiff has filed a brief in support of the Complaint. Doc.13. Defendant has filed a brief in support of the Answer. Doc. 14. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Doc. 4.

## II.
## PROCEDURAL HISTORY

On April 10, 2008, Plaintiff filed applications for benefits, alleging a disability onset date of March 31, 2008. Tr. 9, 242-49. On June 5, 2008, Plaintiff's applications were denied. Tr. 103-107. Plaintiff filed a timely request for a hearing before an administrative law judge (ALJ). Tr. 108. After a hearing, the ALJ issued a decision unfavorable to Plaintiff, on May 27, 2010. Tr. 9-17. On May 26, 2011, the Appeals Council denied Plaintiff's request for review. Tr. 1-3. As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008)

2

("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent

conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guilliams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past

relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff alleges that he became disabled commencing March 31, 2008. Plaintiff, who was born on September 2, 1964, testified that he has a high school degree; that he broke his neck in 1969 and had pain much of his life; that he was in a car accident on March 31, 2008; that, in 2008, he underwent surgical repair of his spine; that he had depression which was controlled by medications; that he had difficulty walking and reaching overhead and out in front; and that he could stand for forty minutes and lift five pounds with his left hand and a gallon of milk with his right hand. Tr. 26, 49-57.

The ALJ found that Plaintiff had not engaged in substantial gainful employment since his alleged onset date; that he had the severe impairments of cervical degenerative disc disease, low back pain, and depression; that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment; that Plaintiff had the RFC for sedentary work except that he could occasionally climb, stoop, balance, kneel, crouch or crawl, occasionally reach overhead with either arm, and must avoid concentrated exposure to vibrations; that Plaintiff was unable to perform his past relevant work; that, pursuant to the testimony of a VE, there is work in the national economy which Plaintiff can perform; and that, therefore, Plaintiff is not disabled.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ gave improper weight to the opinion of Kimberly A. Schisler, D.O., who examined Plaintiff; because the ALJ failed to explain why he discounted a portion of Dr. Schisler's findings; because objective test results support a finding that Plaintiff is disabled; because the ALJ improperly determined Plaintiff's RFC; and because the ALJ failed to properly consider Plaintiff's credibility.

**A.      Plaintiff's Credibility:**

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. Guilliams, 393 F.3d at 801; Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See

also <u>Halverson v. Astrue</u>, 600 F.3d 922, 932 (8th Cir. 2010); <u>Cox v. Barnhart</u>, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered objective test results, including that imaging studies, from July 21, 2008 to June 2, 2009, showed, among other things, solid fusions, a solid bridge at C6-7, and slight degenerative changes from C2 to C4. Tr. 13-14. The court notes that after Plaintiff's March 2008 automobile accident, a CT of the cervical spine showed no acute injury. Tr. 344. The CT of the cervical spine showed, in regard to both the thoracic and lumbar spine, that alignment was normal and that there were no compression deformities or fractures. In regard to the thoracic spine, the CT showed multilevel degenerative endplate change and a posterior fusion of C1 through C4. Tr. 350. The impression from a CT of the head included fracture of the right C7 transverse process, focal kyphosis of C6-7, distraction of the left C6-C7 facet joint, soft tissue density at the anterior epidural space, soft tissue swelling, postoperative changes from posterior element fusion, and no acute intracranial injury. Head CT findings included no acute intra or extra-axial fluid collection, normal size and shape, and no mass effect of midline shift Tr. 354. Plaintiff had surgery to remove a damaged disc and to fuse vertebrae on April 4, 2008.[1] Tr. 370. The ALJ considered that Daniel Riew, M.D., who was Plaintiff's surgeon, reported, on May 9, 2008, that a cervical spine x-ray indicated *normal alignment and positioning*. Dr. Riew reported that x-rays of that date showed that "*everything look[ed] in good position*." Tr. 423. A July 31, 2008 x-ray showed that there was *no abnormal motion* in regard to Plaintiff's discectomy and fusion and degenerative disc disease at C2-C4. Tr. 479.

---

[1] The court notes that Plaintiff filed for benefits on April 10, 2008, which was only six days after he had surgery.

The ALJ considered that x-rays from January to November 2009 indicated surgical changes in the c-spine, possible changes in the right shoulder, *minimal* narrowing of the right knee joint spaces, *minimal* spine disc narrowing, and a *stable fusion* of the c-spine. Tr 13. In particular, a January 26, 2009 x-ray of the thoracic spine revealed osteophyte formation of the mid to lower thoracic vertebra and some *mild* disc narrowing at T6-T9. Tr. 503. An x-ray of this same date of the cervical spine showed post-surgical changes at C1-C3 and disc space narrowing. Tr. 504. A June 2, 2009 CT of the cervical spine showed *solid bridging* bone surrounding Plaintiffs discectomy and fusion, no periprosthetic lucency, degenerative changes of the cervical spine, and postoperative changes of the posterior element of the fusion. Tr. 481-82. November 11, 2009 x-rays showed diastasis of a joint in Plaintiff's shoulder and *minimal* narrowing of medial compartment thibofemoral space in Plaintiff's right knee. Tr. 501-502. It is proper for an ALJ to consider the absence of objective medical evidence to support a claimant's complaints of disabling pain, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence. Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010) (citing Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir.2008)). The court finds, therefore, that substantial evidence supports the ALJ's consideration of objective test results upon his determining that Plaintiff was not fully credible and, ultimately, that Plaintiff was not disabled. Thus, Plaintiff's contention to the contrary is without merit.

Second, the ALJ considered doctors' records. Tr.13-15. After Plaintiff was in the March 2008 automobile accident, clinical examination showed that Plaintiff had "[n]o deficits" bilaterally in the upper and lower extremities and that sensation and motor strength were intact. Tr. 327. On examination at the emergency room, on April 3, 2008, Plaintiff "could move all 4 extremities well" and had 3/5 grip strength on one side and 4/5 on the other. Tr. 344. The ALJ considered that, on

May 9, 2008, Dr. Riew reported that Plaintiff's *grip* was within *normal limits*. Tr. 13. The court notes that, on this date, Dr. Riew reported that Plaintiff said that his arms and hands were doing better. Tr. 423.

The ALJ considered that subsequent to Plaintiff's surgery, Plaintiff had a motor vehicle accident on July 7, 2008, which aggravated the neck injury for which he had surgery. Tr. 13. The ALJ further considered that Dr. Riew reported, from July 21, 2008, to June 2, 2009, that the strength in Plaintiff's left arm had improved and that he had no activity restriction despite his automobile accident. Tr. 14. The record reflects, that on July 31, 2008, Dr. Riew reported that Plaintiff said "he had been getting better"; that he still had "some pain"; that his "left arm [was] getting stronger" and he felt "like he [was] doing well"; that, on exam, Plaintiff had normal strength, reflexes, and sensation; that Dr. Riew told Plaintiff that spine levels where he was fused would "never cause any problems for him"; that the impression was that Plaintiff was "doing well with recovery of neurologic function from result of fracture dislocation"; and that Plaintiff had "no restriction of activity." Tr. 471.

The ALJ considered that, on September 5, 2008, Plaintiff reported to Andrew Gayle, M.D., that his pain had increased and the range of motion in his left arm, shoulder, and hand were reduced. Tr. 13. Also, on this date Plaintiff complained of neck pain with decreased range of motion and some pain in the left arm and hand. Tr. 509-10. On January 26, 2009, Dr. Gayle saw Plaintiff for evaluation of neck pain and reported that Plaintiff did *not have joint stiffness, swelling or muscle weakness*; that neurologic examination showed "*normal sensation*"; that Plaintiff's reflexes were normal; that Plaintiff had *5/5 strength in all four extremities* and *normal range of motion in all major joints*; and that, in regard to his spine, ribs, and pelvis, Plaintiff had "no palpable muscle spasms" and his spine was "straight with no abnormal curvatures." Tr. 512-13. On March 26, 2009, Dr. Gayle reported that Plaintiff had back and joint pain and joint stiffness and that he had *5/5 strength in all four extremities*

and *normal range of motion in all major joints*. Tr. 516-17. On April 21, 2009, Dr. Riew reported that examination showed that Plaintiff's reflexes and motor strength of the upper extremities were normal; that Plaintiff said he had "altered sensation to the triceps region of the left arm to light touch"; that Plaintiff said his symptoms were "much better than before surgery"; and that Plaintiff was concerned that he was "unable to carry his own weight on his father's farm." Tr. 473-74. On June 2, 2009, Dr. Riew reported that Plaintiff had *normal gait* without the use of an assistive device; that he was well developed; that his *reflexes, motor strength, and sensation of the upper extremities* were *normal*; that he told Plaintiff that he "had significant improvement since the surgery"; that Plaintiff was to improve his strength with weightlifting; and that Plaintiff was to return in one year. Tr. 476-77. On June 24 2009, Dr. Gayle reported that Plaintiff said his neck pain was "mild to moderate" and that Plaintiff had *5/5 strength in all four extremities*. Tr. 518-19. He reported the same in regard to Plaintiff's strength on July 31 and September 24, 2009. Tr. 521, 529.

The ALJ considered that from September 29, 2009, to November 11, 2009, Plaintiff was seen by Yuri Soeter, M.D. Dr. Soeter, who saw Plaintiff for pain management, reported that Plaintiff complained of chronic neck pain and bilateral upper extremity pain, which was worse on the left, and that Dr. Soeter's diagnosis was post-laminectomy syndrome with cervicalgia and upper extremity radiculopathy. Tr. 14. When Dr. Soeter saw Plaintiff on September 29, 2009, he reported that Plaintiff complained of pain; that he smoked a one-half pack of cigarettes a day; that he said that he "occasionally smok[ed] marijuana"; that Plaintiff had *5/5 motor strength* in the upper extremities; that his incisional scar was well healed; that Plaintiff was oriented; and that he had decreased sensation to light touch and temperature change of the bilateral upper extremity. Tr. 547. Dr. Soeter reported, on October 20, 2009, that Plaintiff had tenderness to palpation at C4-C7, muscle spasm with trigger point areas, difficulty lifting the right upper extremity beyond forty-five degrees, and decreased

13

sensation to light touch of the left upper extremity. Tr. 550-51.  Dr. Soeter reported, on November

10, 2009, when Plaintiff was seen for follow-up, that Plaintiff's *motor strength* was *5/5* in the upper

extremities with "*slight decreased grip* of the left hand"; that he was unable to lift the right upper

extremity beyond 45 degrees; that there was "minimal tenderness to palpation of the bilateral knee";

and that Plaintiff was oriented. Tr. 554.  On November 11, 2009, Plaintiff told Dr. Gayle that he had

worsening neck pain, which was moderate to severe.  On this date Dr. Gayle noted tenderness to

palpation in the right shoulder and some decreased range of motion and tenderness to palpation in

the left knee. Tr. 527-29.  The ALJ also considered records from Dr. Schisler which records are

considered in detail below. Although an ALJ may not disregard a claimant's subjective allegations

because they are not fully supported by objective medical evidence, an ALJ may properly discount

subjective complaints if inconsistencies exist in the record as a whole. Gonzalez v. Barnhart, 465 F.3d

890, 895 (8th Cir. 2006) (citing Ramirez v. Barnhart, 292 F.3d 576, 581 (8th cir. 2002)); 20 C.F.R.

§ § 404.1529(c), 416.929(c).  See also Orrick v. Sullivan, 966 F.2d 368, 372 (8th Cir. 1992) (holding

that the ALJ may give more weight to the medical records than to a claimant's testimony); Russell

v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991); Edwards v. Sec'y of Health & Human Servs., 809

F.2d 506, 508 (8th Cir. 1987).  The court finds that the ALJ's consideration of Plaintiff's medical

records, including the observations of his doctors, is based on substantial evidence and that it is

consistent with the regulations and case law.

Third, the ALJ considered that, when Plaintiff saw Dr. Schisler for a consultive examination

on January 18, 2010, Dr. Schisler suggested that Plaintiff exaggerated his symptoms. Tr. 14.  Indeed,

Dr. Schisler reported that Plaintiff "seemed to improve upon his grip when he was distracted" and

that, in regard to Plaintiff's strength, "there was some question as to effort." Tr. 561.  Further, Dr.

Schisler reported that Plaintiff said he could do " very little to nothing" and that "it was felt that when

he was distracted he could actually improve upon the task that he had been previously asked to do." Dr. Schisler also reported that Plaintiff gave "limitations that [he] couldn't walk farther than about 15 yards before he would have to sit down" and that he "was witnessed exiting the clinic walking all the way to the parking lot which [was] greater than 1,000 feet. He did not have to stop and sit down or rest and walked at a normal pace." Tr. 559-61. "[A]n ALJ may disbelieve a claimant's subjective reports of pain because of inconsistencies or other circumstances." Eichelberger, 290 F.3d at 589. Certainly, when an examining physician express doubts about the validity of a claimant's complaints, this is a factor which discounts the claimant's credibility. See Baker v. Barnhart, 457 F.3d 882, 892-93 (8th Cir. 2006) (holding that the ALJ properly discounted the claimant's complaints of pain upon considering reports that the claimant exaggerated his symptoms during an examination) (citing Clay v. Barnhart, 417 F.3d 922, 930 n. 2 (8th Cir. 2005) (noting that two psychologists' findings that the claimant was "malingering" on her IQ tests cast suspicion on the claimant's motivations and credibility); Jones v. Callahan, 122 F.3d 1148, 1151-52 (8th Cir. 1997) (holding that a physician's observation "of the discrepancies in [the claimant's] appearance in the examining room and those outside when he did not know that he was observed" supported an ALJ's finding that the claimant's complaints were not fully credible). See also Russell v. Sec'y of Health, Ed. & Welfare, 540 F.2d 353, 357 (8th Cir. 1976) (holding that where doctors reported that the claimant was exaggerating her ailments and was uncooperative, the record did not establish the requisite degree of certainty that the claimant was disabled). The court finds that the ALJ's decision, in this regard, is supported by substantial evidence and that it is consistent with the regulations and case law.[2]

---

[2]     The court notes that cases which Plaintiff cites in support of his position that the ALJ improperly considered Dr. Schisler's suggestion that he was exaggerating his symptoms are distinguishable from the matter under consideration. In Plaintiff's cases there was evidence to suggest that Plaintiff was not exaggerating his pain. See, e.g., O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003). In any case, Dr. Schisler's opinion regarding the exaggeration of

Fourth, the ALJ considered that, although Plaintiff testified at the hearing that physical therapy caused more pain, Plaintiff's testimony was inconsistent with records from his physical therapy. Tr. 14, 540-43. Contradictions between a claimant's sworn testimony and what he actually told physicians weighs against the claimant's credibility. Karlix, 457 F.3d at 748. As such, the court finds that the ALJ's decision, in this regard, is supported by substantial evidence and that it is consistent with the regulations and case law.

Fifth, the ALJ considered that Plaintiff told Dr. Soeter that physical therapy "helped a little" with his pain and that trigger point injections offered some relief. Tr. 14. Further, Dr. Gayle reported, on January 26, 2009, that Plaintiff said his pain was "relieved by medication." Tr. 512. The ALJ considered that physical therapy records, from August 4, 2009, to September 1, 2009, reflect that Plaintiff had three sessions of physical therapy, and that, with each session, his shoulder range of motion increased. Tr. 14, 340-43. Indeed, Dr. Gayle reported on September 24, 2009, that Plaintiff said he had "some improvement" with physical therapy. Tr. 522. The ALJ also considered that, when Plaintiff was seen for mental health counseling and diagnosed with depressive disorder not otherwise specified, Plaintiff was placed on psychotropic medications; that Plaintiff responded well to the medications; that, in particular, his global assessment of functioning (GAF)[3] rose from 50 to 55,

---

Plaintiff's symptoms was just one factor the ALJ considered when determining that Plaintiff was not fully credible. In particular, as discussed above, the ALJ considered objective test results and findings of Plaintiff's treating doctors. Moreover, upon examining Plaintiff, Dr. Schisler noted that Plaintiff's gait was within normal limits; that he could heel/toe tandem walk, stand on his toes, and stand on his heels; and that he could squat and get up with some mild difficulty. Tr. 561. These examination results, as well as Dr. Schisler's observations as discussed above, were inconsistent with Plaintiff's telling Dr. Schisler that he could do "very little to nothing."

[3]     Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or

"relatively quickly"; and that Plaintiff was placed on Cymbalta for irritability which was effective for alleviating that symptom. Tr. 14. Indeed, records reflect that Plaintiff was started on Cymbalta on March 30, 2009; that, on September 21, 2009, it was noted that Plaintiff's GAF had been 50 in the past; and that, on September 21, 2009, Plaintiff's GAF was 55. Tr. 533, 536. Conditions which can be controlled by treatment are not disabling. See Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James for James v. Bowen, 870 F.2d 448,450 (8th Cir. 1989). The court finds that the ALJ's decision, in this regard, is supported by substantial evidence and that it is consistent with the regulations and case law.

Sixth, in regard to Plaintiff's daily activities, he testified that he tried to help his father on his farm with the firewood; that the vibration of a chain saw was "too much"; and that he helped by picking up the smaller pieces. Plaintiff also testified that he walked to his mother's home to watch television during the day and that this walk was ten to fifteen yards. Tr. 47-49. As considered by the ALJ, Plaintiff said he did some laundry, "but did not carry the laundry baskets or lift wet cloths"; that

---

communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32. See also Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) ("[A] GAF score of 65 [or 70] ... reflects 'some mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, has some meaningful interpersonal relationships.' " (quoting Kohler v. Astrue, 546 F.3d 260, 263 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)) (alterations in original).

he had difficulty buttoning buttons; and that he would lay in a recliner three to four hours a day. Tr. 13. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin, 830 F.2d at 883).

Seventh, after having surgery doctors told Plaintiff that his failure to wear an immobilization device could kill or paralyze him, but after "verbalizing an understanding [] [Plaintiff] still removed precautions." Tr. 327. See Eichelberger, 390 F.3d at 589 (holding that the ALJ properly considered that the plaintiff cancelled several physical therapy appointments and that no physician imposed any work-related restrictions on her) (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (holding that a claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain).

Eighth, although Plaintiff suggests that his taking strong pain medication supports his credibility, Dr. Riew, who performed Plaintiff's surgery, reported that he refused Plaintiff's request to refill his Valium because "he had a lot of meds. He [could] have vicodin ESS at [that] point and nothing else." Tr. 425. The court does note that Plaintiff was prescribed prescription pain medication, including Lorcet and Flexeril by Dr. Gayle in June, July, and September 2009. Tr. 518-

23. Also, Dr. Soeter prescribed Zonegran for pain in September 2009 and hydrocodone in November 2009. Tr. 527-29, 534-48. Additionally, Plaintiff had trigger point injections from Dr. Soeter. Tr. 554-56.

Ninth, although Plaintiff suggests that third party statements, including a handwritten letter from a friend, support his credibility and that the ALJ did not consider these statements, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. Tr. 312. See Moore ex rel. Moore v. Barnhart, 413 F.3d 718, 721 n.3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review."); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Moreover, notes from a Social Security employee which Plaintiff states the ALJ failed to consider, were recorded on April 14, 2008, which date is about two weeks after Plaintiff had surgery. Tr. 300-303. 20 C.F.R. § 414.909 states that "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." The court finds that Plaintiff's contention regarding third party statements is, therefore, without merit.

In conclusion, the court finds that the ALJ's credibility determination is based on substantial evidence and that it is consistent with the Regulations and case law.


**B.    Dr. Schisler's Opinion:**

Dr. Schisler was a consultive examiner who saw Plaintiff on January 12, 2010. Plaintiff argues that the ALJ should not have discredited some aspects of Dr. Shisler's opinion while crediting her comments relating to Plaintiff's exaggeration. In particular, Plaintiff contends that the ALJ should have credited the walking limitation which Dr. Schisler imposed on Plaintiff. Plaintiff also argues that

the ALJ did not sufficiently explain whether and/or why he rejected or accepted parts of Dr. Schisler's opinion.

The court has discussed some of Dr. Schisler's findings and records above, in regard to Plaintiff's credibility. In particular, the court has addressed Dr. Schisler's comments regarding Plaintiff's exaggeration of his complaints and found that the ALJ properly considered Dr. Schisler's remarks and observations and that the ALJ's decision, in this regard, is supported by substantial evidence. Additionally, Dr. Schisler reported, on examination, that Plaintiff's neck was supple; that his gait was within normal limits; that he could squat and get back up with "some mild difficulty"; that "DTRs were symmetric in both upper and lower extremities"; and that his strength was "slightly decreased on the left." Tr. 560-61. Dr. Schisler reported that Plaintiff's upper extremity strength effort was "fair" and that his strength was 5/5 on both the left and right; and that his grip strength was 4/5 on the left and 5/5 on the right. Tr. 562-63. Dr. Schisler further reported, on a Medical Source Statement of Ability to Do Work-Related Activities (Physical), that Plaintiff could occasionally lift and carry up to ten pounds; that he could sit forty-five minutes at a time; that he could stand fifteen to twenty minutes at time; that he could walk "20 yd"; and that, in an 8-hour work day, he could sit six hours, stand one hour, and walk fifteen to twenty minutes. Tr. 564-65.

As stated above, the ALJ found that Plaintiff could engage in sedentary work with the exception that he could occasionally climb, stoop, balance, kneel, crouch or crawl and occasionally reach overhead with either arm and must avoid concentrated exposure to vibrations. Tr. 12. 20 C.F.R. § 404.1567(a) defines sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and

standing are required occasionally and other sedentary criteria are met." Indeed, SSR 85-15, 1985 WL 56857, at *5, states that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. ... If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." The sitting requirement for the full range of sedentary work "allows for normal breaks, including lunch, at two hour intervals." Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (citing SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996)). Additionally the range of sedentary jobs requires a claimant "to be able to walk or stand for approximately two hours out of an eight-hour day. The need to alternate between sitting and standing more frequently than every two hours could significantly erode the occupational base for a full range of unskilled sedentary work." Id. at 997 (citing 1996 WL 374185 at *7).

First, to the extent the ALJ did not incorporate all limitations found by Dr. Schisler in the Medical Source Statement into Plaintiff's RFC, the court notes that Dr. Schisler's own medical findings upon examination of Plaintiff are inconsistent with the limitations she imposed. For example, she concluded that Plaintiff could walk only twenty yards but observed that Plaintiff could walk 1,000 feet. Tr. 559, 565. Additionally, Dr. Schisler concluded that Plaintiff could only occasionally lift ten pounds and that his strength was only slightly decreased on the left but she reported that his effort at lifting was only fair. See Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate the need to evaluate the record as whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a

treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment).

Second, Dr. Schisler was a consulting/examining doctor and not Plaintiff's treating doctor. It is well settled that the report of a consulting physician who has seen the claimant only once is of little significance by itself. See Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). See also Turpin v. Bowen, 813 F.2d 165, 170 (8th Cir. 1987) ("T]he report of a consulting physician who examine[s a] claimant once does not constitute 'substantial evidence' upon the record as a whole"); Piercy v. Bowen, 835 F.2d 190, 191 (8th Cir. 1987).

Third, to the extent Dr. Schisler imposed limitations on Plaintiff by virtue of checkmarks on a form, a physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo, 377 F.3d at 805-06; Hogan 239 F.3d at 961; SSR 96-2p, (July 2, 1996).

Fourth, limitations imposed by Dr. Schisler are inconsistent with clinical findings of other doctors and objective test results as discussed above in regard to Plaintiff's credibility. Where limitations imposed by a doctor are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight. Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987). An ALJ may discount a doctor's opinion where other medical assessments are supported by better or more thorough medical evidence. Prosch, 201 F.3d at 1013.

Fifth, the ALJ considered the record as a whole and did not indicate that controlling weight to Dr. Schisler's opinion, although he afforded her opinion "significant weight in most areas." Tr. 15.

Sixth, the ALJ articulated that his reasons for not including the upper extremity limitations suggested by Dr. Schisler in Plaintiff's RFC were that the medical evidence of record did not indicate Plaintiff was as restricted as Dr. Schisler suggested and that Dr. Schisler's conclusions were based

22

on Plaintiff's subjective complaints. Tr. 15. As such, the ALJ gave good reason for not giving controlling weight to Dr. Schisler's opinion in regard to all limitations suggested by this doctor. See SSR 96-2p at *5 (citing 20 C.F.R. §§ 404.1527, 416.927) (requiring an ALJ to provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s) "). See also Martise v. Astrue, 641 F3d 909 (8th Cir. 2010) (quoting Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007)). In conclusion, the court finds that the ALJ gave proper weight to Dr. Schisler's opinion and that the ALJ's decision, in this regard, is supported by substantial evidence. Further, the court finds that the ALJ sufficiently addressed Dr. Schisler's findings. To the extent the ALJ may not have explained why he did not credit all of Dr. Schisler's findings, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999). Because the ALJ's ultimate determination in the matter under consideration is based on substantial evidence, as found below, the court finds that any deficiency in the ALJ's decision writing does not affect the out come of this case. As such, Plaintiff's arguments in this regard are without merit.

C.      **Opinions of Dr. Gayle and Dr. Soeter as Reflected in the ALJ's RFC Determination:**

Plaintiff contends that the ALJ did not give proper weight to the clinical findings of Dr. Gayle and Dr. Soeter. Plaintiff further argues that the ALJ's RFC determination did not reflect the findings of these doctors that Plaintiff had symptoms such as decreased sensation and spasms. Plaintiff also argues that these findings are not reflected in the RFC which the ALJ assigned to Plaintiff. As such, Plaintiff contends that there is no medical support for the ALJ's RFC determination.

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).

Consistent with the Regulations and case law, the ALJ in this matter, considered the requirements of a sedentary job and concluded that Plaintiff could perform sedentary work with certain limitations. See SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996); Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004).

The RFC need only include a plaintiff's credible limitations. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."). Pursuant to this requirement, as discussed above, the ALJ found that Plaintiff's subjective complaints were not credible. The court has found this determination is based on substantial evidence.

Significantly, neither Dr. Gayle or Dr. Soeter rendered a specific opinion concerning Plaintiff's ability to engage in work-related tasks. See Young, 221 F.3d at 1069 ("We find it significant that no physician who examined Young submitted a medical conclusion that she is disabled and unable to perform any type of work.") (citing Brown, 87 F.3d at 964-65). Moreover, as discussed above, Dr. Gayle repeatedly reported that Plaintiff had 5/5 strength in all four extremities and, in March 2009, he reported that Plaintiff had normal range of motion in all four extremities. Likewise, Dr. Soeter

reported, in September and November 2009, that Plaintiff had 5/5 motor strength in the upper extremities and that he only had a "slight" decreased grip of the left hand. These abilities are consistent with the ALJ's finding that Plaintiff can engage in sedentary work with certain limitations. As such, the court finds that the findings of Dr. Gayle and Dr. Soeter are consistent with the ALJ's RFC determination. Further, the ALJ's consideration of Dr. Gayle's and Dr. Soeter's opinions is based on substantial evidence and is consistent with the r egulations and case law.

Moreover, as discussed above, Dr. Riew, who was Plaintiff's surgeon and who followed him after surgery, reported that, after Plaintiff's surgery, alignment and positioning were good and that Plaintiff improved. By May 2008, Plaintiff's grip was within normal limits. In June 2008, he reported that Plaintiff had no activity restriction. By July 31, 2008, Dr. Riew reported that Plaintiff was doing well with recovery of neurologic function and that he had normal strength, reflexes, and sensation. At that point, he told Plaintiff that he did not have to return for one year. Tr. 471. Additionally, Plaintiff testified that, after his surgery, Dr. Riew told him he could "go back to work" and that he "could lift anything [he] wanted to get a hold of and lift." Tr. 62. Rather than restricting Plaintiff in regard to lifting, Dr. Riew told Plaintiff that he should engage in weight lifting to increase his upper body strength. Tr. 477. As Plaintiff's treating surgeon, Dr. Riew's opinion is entitled to controlling weight because it is consistent with objective testing, including CT scans and x-rays, as well as with Dr. Riew's clinical findings. See Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) ("A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'") (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). In conclusion the court find that the ALJ gave proper weight to Dr. Riew's opinion and the opinion of all other doctors of record and that the ALJ's consideration of these opinions is based on substantial evidence. Further, the court

finds that the ALJ's RFC determination is based on substantial evidence and is consistent with the regulations and case law.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief sought by Plaintiff in his Complaint and Brief in Support of Complaint be **DENIED**; Docs. 1, 13,

**IT IS FURTHER RECOMMENDED** that a separate judgment be entered incorporating this Report and Recommemdation.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of July, 2012.